George Beisheim, Jr., J.
In this action to recover two chattels, plaintiff, by order to show cause, brought on a motion before Special Term, Part I, to punish the defendant for contempt for the alleged violation of and noncompliance with an order of seizure issued ex parte on November 9, 1971 at Special Term, Part II, of this court, and the defendant cross-moved to vacate the order of seizure. The Presiding Justice at Special Term, Part I, referred this matter to Special Term, Part IIIA, for a hearing to determine whether or not the defendant had committed any acts of contempt as charged, and also referred defendant’s cross motion for disposition.
The order of seizure directed the Sheriff of Westchester County, upon the compliance on the part of the plaintiff with certain conditions prescribed in said order, to seize certain chattels described in the affidavit upon which the order was based, and further directed the Sheriff for that purpose, if the chattels should not be delivered to him, to break open, enter and search for the chattels in the place where they may be and to hold the same in accordance with the provisions of CPLR article 71. The affidavit upon which the order of seizure was based alleged, inter alia, that the plaintiff was the owner of one used Caterpillar Wheel Loader of the stated value of $22,890 and one used Caterpillar Traxcavator of the alleged value of $8,738.70, it being averred therein that the ownership of the plaintiff was that as assignee of H. O. Penn Machinery Company, Inc., who had delivered said chattels to the defendant pursuant to a security agreement dated June 11, 1970, under which plaintiff’s assignor conditionally sold said chattels to the defendant for the sum of $36,360, including finance charges, payable in 18 monthly installments of $2,020. The security agreement contained, among others, the following provision: “It is expressly agreed and understood that the title to the above mentioned machinery and/ or equipment and all replacements thereof and additions thereto shall be and remain in the Seller or its assigns until the full *477 purchase price is paid in cash, or until any notes given in whole or in part to represent the purchase price, or any modifications, extensions or renewals of said notes and interest are fully paid in cash. The Purchaser shall furnish the Seller with a duly executed copy of this 'Contract together with a financing statement in recordable form, to be filed with the County Clerk, or in accordance with the filing provisions of the particular .state or county for conditional sales contracts, to be filed where the machinery and/or equipment shall at all times be located, within Ten (10) days after acceptance of this Agreement by the Seller and wherever also required for the protection of the Seller’s title to the equipment and all of its rights hereunder. The Purchaser will promptly furnish the Seller such evidence of its filing and recording. The machinery and equipment shall remain personal property and title thereto shall remain in the ¡Seller exclusively until the purchase price therefor is fully paid. The Purchaser shall do no act or thing whereby Seller’s title or rights may be encumbered or impaired.”
The court finds said security agreement to be a conditional sales contract within the historical meaning of the term (see Uniform Commercial Code, § 9-105, subd. [1], par. [h], and Official Commentary thereto).
The affidavit further alleges that as of October 29, 1971, defendant was seven months in arrears in making the payments due under the security agreement and that the plaintiff had elected and does elect that the entire balance of $22,462.20 is presently due and payable. A summons and complaint in the action to recover the chattels was not previously served upon the defendant but was attached to plaintiff’s papers presented to the court with the proposed order of seizure. Plaintiff’s affidavit further alleges that notice of default and demand for payment were duly .served upon the defendant as well as a demand for the return of the chattels described in the security agreement and that the defendant had failed and refused to make the chattels available to the plaintiff.
In connection with plaintiff’s motion to punish the defendant for contempt, it was averred, inter alia, that the plaintiff had delivered the order of seizure and a copy of the summons and complaint to the .Sheriff of the County of Westchester with an undertaking in the amount of $40,000, approved by the court, and that plaintiff had provided the Sheriff with the necessary documents to seize the two chattels. It was further alleged that on November 18,1971, an officer of plaintiff, plaintiff’s attorney, and a Deputy Sheriff, had met with Fred Pistone, Jr., the presi *478 dent of the defendant, and served upon him the order of seizure, affidavit and a copy of the summons and complaint and undertaking. Plaintiff alleges that Fred Pistone, Jr., admitted that he had possession of the chattels in question, that he knew where they were but refused to surrender them or to advise the Sheriff where said chattels were located despite demands made upon him by the Deputy Sheriff present to do so. The plaintiff alleges: “ That the conduct of Fred Pistone, Jr. is calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of the plaintiff, General Electric Credit Corporation, in that the Sheriff of the County of Westchester has been unable to seize the property in accordance with the Order of this Court.”
At the commencement of the hearing before this court, the plaintiff asked, in order to expedite the matter, that the affidavit submitted by plaintiff in support of its motion to punish for contempt be deemed as an answering affidavit to defendant’s cross motion to vacate the order of seizure. The court, with no objection by the defendant, permitted this procedure and then plaintiff, through the testimony of Deputy Sheriff Herbert Tompkins, Alan J. Helfand, attorney for the plaintiff, and Louis Gioia, accounts manager of the plaintiff, produced evidence substantiating and elaborating upon the averments in plaintiff’s affidavit in support of the order of seizure. It was further testified by plaintiff’s witnesses that at the meeting at defendant’s office Mr. Pistone stated that he was using the two chattels upon another job and plaintiff’s attorney testified that the proceeds to be received by the defendant from this other job would not be turned over to the plaintiff but that defendant’s president would leave the State with the money.
Defendant was represented at the hearing by his attorney but did not appear personally and offered no witnesses or other evidence to contradict the testimony given by the witnesses for the plaintiff.
The court shall first decide defendant’s cross motion to vacate the order of seizure. In this connection, defendant advanced the argument, inter alia, that the order is invalid because CPLR 7102 is unconstitutional as a violation of the Fourth Amendment made applicable to the State under the Fourteenth Amendment, citing the case of Laprease v. Raymours Furniture Co. (315 F. Supp. 716 [1970]). The Laprease case (supra) declared unconstitutional CPLR article 71 as it then was; but the statute before this court is an amendment to the said statute (L. 1971, ch. 1051), adopted after Laprease, whereby chattels are 'now to be seized *479 by the Sheriff pursuant to an order of seizure of the court rather than upon an affidavit, requisition and undertaking delivered to the Sheriff which were the statutory requirements in effect and brought before the court in the Laprease decision. This is clear from the finding of that court as set forth at page 725: “ In so declaring [i.e., that article 71 was unconstitutional], we do not hold or intend to intimate that nothing less than a full adversary evidentiary hearing prior to seizure, will comport with the requirements of procedural due process.
“ Neither do we interfere with the remedy of the traditional replevin action recognized by Article 71, except as herein specifically provided. What is clear, however, is that the statutory scheme employed by New York, which permits prejudgment seizure without even an ex parte order of a judge or court upon a showing of justification therefor, does not comport with procedural due process or the 4th and 14th Amendments.”
The instant case, therefore, is distinguishable from the facts in the Laprease case (supra) in that the plaintiff herein procured an order from a Judge pursuant to the present statutory requirements (L. 1971, ch. 1051), while in the Laprease case the writ of seizure was not previously reviewed by any judicial authority, and upon the additional ground that the chattels in question are not those necessary for day-to-day living, the taking of which will impose tremendous hardship on the defendant, as was the case in Laprease. (See Sniadach v. Family Finance Corp., 395 U. S. 337.)
Further, in support of the cross motion to vacate, defendant contends that CPLB, article 71 is not a remedy available to plaintiff in that it must proceed pursuant to Uniform Commercial Code (art. 9, pt. 5, specifically § 9-503) which states, as pertinent:
“ Secured Party’s Bight to Take Possession After Default.— Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.”
It is apparent from the section that the Uniform Commercial Code provides that the plaintiff who is a “ secured party” as that term is defined in section 9-105 (subd. [1], par. [i]), is permitted to proceed under CPLB article 71 when the debtor is in default under the security agreement. (Matter of Yale Exp. System, 250 F. Supp. 249, revd. on other grounds 370 F. 2d 433.)
The court finds that there was probable cause for the order of seizure based upon the averments in the affidavit upon which *480 it was based, and plaintiff’s case has been bolstered even more by the unrefuted testimony of one of the witnesses at the full adversary evidentiary hearing that the defendant’s president was about to depart from the jurisdiction with the money to be received by defendant from the job upon which the defendant was using plaintiff’s equipment. Defendant’s motion to vacate the order of seizure is without merit and is herewith denied.
The court also denies that part of plaintiff’s motion seeking to punish Fred Pistone, Jr., for contempt. There was no specific directive by the court to either the defendant or to Fred Pistone, Jr., individually or as its president which Mr. Pistone disobeyed. The fact that Pistone did not tell the Sheriff where the chattels were located violated no specific direction of the court. In order to find a person guilty of contempt, his disobedience of the court order must be clear and unequivocal. (Matter of Overton, 226 App. Div. 684; New York City Tr. Auth. v. Loos, 9 Misc 2d 492.) There was no such disobedience by Pistone.
Plaintiff, in its motion to punish for contempt, alternatively requested “ such other and further relief as to the court may seem just and proper ”. Under the circumstances of this case, the court finds that the conduct of the defendant and Fred Pistone, Jr., while not constituting contempt, should not be encouraged since their position is a most inequitable one. Admittedly, defendant was seven months in arrears under its security agreement entered into with the plaintiff. Thus, defendant had breached its contract, owed the plaintiff money and was using plaintiff’s property, to which, under the evidence adduced at the hearing defendant had no vestige of right of possession, in furtherance of defendant’s personal aims when defendant had no right to do so.
Accordingly, the court directs, pursuant to CPLR 7112 that the defendant, by its President, Fred Pistone, Jr., appear at Special Term, Part IIIA, of this court on December 17, 1971, at 9:80 a.m. and this direction is also given to Fred Pistone, Jr., individually, for the purpose of submitting to an examination whereby plaintiff may be furnished information with respect to the location of the two chattels which are the subject of this proceeding. Furthermore, the defendant is restrained, pending further order of this court, from acting in violation of whatever rights the plaintiff may have in the chattels aforesaid, and the $40,000 undertaking heretofore filed by the plaintiff shall be deemed sufficient surety to reimburse the defendant for all damages wrongfully caused by such restraint.
Submit order.