**UNITED STATES of America**

v.

**CERTAIN REAL PROPERTY AND PREMISES KNOWN AS 44 AUTUMN AVENUE, BROOKLYN, NEW YORK; and United States Currency in the Sum of Two Hundred Fifty–Three Thousand, Eight Hundred Ninety–Three Dollars ($253,893), More or Less.**

No. CV–91–2915.

United States District Court, E.D. New York.

May 24, 1994.

Nancy Miller, Asst. U.S. Atty., Brooklyn, NY, for plaintiff.

Claimants appeared pro se.

*MEMORANDUM AND ORDER*

GLASSER, District Judge:

The United States of America ("plaintiff" or the "government") moves for judgment on the pleadings or, alternatively, for summary judgment, seeking an order striking the claim and answer of claimants Efrain Carrasquillo and Rosa Martinez (collectively "the Claimants") filed in this civil forfeiture action and decreeing the forfeiture of defendants. For the reasons set forth below, the motion is denied.

## BACKGROUND

On August 6, 1991, plaintiff filed a verified complaint in rem (the "Complaint") for the forfeiture and condemnation of defendants Certain Real Property and Premises Known as 44 Autumn Avenue, Brooklyn, New York ("Defendant Property") and United States Currency in the Sum of Two Hundred Fifty–Three Thousand, Eight Hundred Ninety–Three Dollars ($253,893), more or less ("Defendant Currency"). The action was brought pursuant to 21 U.S.C. § 881(a)(6)[1] on the grounds that the defendants were furnished or were intended to be furnished in exchange for a controlled substance, constituted proceeds traceable to such an exchange, and/or were used or intended to be used to facilitate a violation of 21 U.S.C. § 841.[2] Compl. ¶¶ 10–24; Declaration of Nancy A. Miller, Dated Mar. 10, 1994 ("Miller Decl.") ¶ 3.

On August 16, 1991, this court issued a warrant for the arrest of Defendant Property and Defendant Currency. Miller Decl. ¶ 4. That same day, the United States Marshals Service (the "Marshals Service") arrested Defendant Property; Defendant Currency thereafter was arrested on August 29, 1991. Miller Decl. ¶¶ 4–5.

On August 27, 1991, the Marshals Service sent notice of the action to Efrain Carrasquillo, who was believed to be the owner of Defendant Property, Compl. ¶ 4; the return receipt indicates that service was made upon Carrasquillo on September 9, 1991. Miller Decl. ¶ 7 & Ex. A. On September 17, 1991, the Marshals Service sent notice of the action by certified mail to Rosa Maria Martinez, who was alleged to reside at Defendant Property. Compl. ¶ 8. Miller Decl. ¶ 8. Plaintiff asserts that although the Marshals Service did not receive the return receipt, Martinez "received actual notice as evidenced by her filing of a claim and Answer on September 17, 1991."[3] Miller Decl. ¶ 8 & Ex. A. The Marshals Service also caused public notice of the action and the arrest of the defendants to be published in the *New York Post* on September 11, 14 and 21, 1991. Miller Decl. ¶ 9 & Ex. A.

On September 10, 1991, the Claimants jointly moved for leave to file and serve *nunc pro tunc* their notice of claim and answer to the Complaint. In the answer attached to

---

1. That section provides as follows:

    (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

    . . . .

    (6) All moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

    21 U.S.C. § 881(a)(6).

2. More specifically, the government alleged in the Complaint that during a search of Defendant

Property conducted pursuant to a search warrant, agents of the Drug Enforcement Administration seized $25,320 in United States currency and a Walther PPK semi-automatic pistol with ammunition. Compl. ¶ 7. Also during the course of that search, and with the consent of Martinez, the agents searched a 1988 Gold Mercedes Benz 560 SEL parked in the driveway of Defendant Property, and seized $228,573 in United States currency. Compl. ¶ 8. The government further alleged that on March 13, 1990, Carrasquillo pleaded guilty to possession in excess of 100 grams of a controlled substance with intent to distribute, and on May 25, 1990, was sentenced by this court to eleven years in prison. Compl. ¶ 9.

3. The Claimants alleged that Martinez did not receive copies of the papers and was aware of the pendency of the action only because Carrasquillo told her about it on the telephone. *See* Claimants' Joint Motion for Leave to File and Serve Notice of Claim *Nunc Pro Tunc* ¶ 3.

their motion, the Claimants admitted and denied various allegations of the Complaint, and asserted the following three affirmative defenses: (1) that the Complaint failed to meet the particularity requirements of Rule E(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"); (2) that Martinez was an "innocent-owner spouse and tenant by the entireties" of Defendant Property; and (3) that plaintiff's action was barred by laches. In addition, the Claimants objected to the first set of interrogatories served upon them by plaintiff with the Complaint on the ground that the interrogatories were designed "to compel self-incrimination and/or adverse spousal/familial testimony" from the Claimants. The Claimants accordingly moved to stay the forfeiture action pending completion of the related criminal proceeding against Carrasquillo.

By Memorandum and Order dated December 16, 1991, this court found that the Claimants had filed the papers within the time prescribed by Supplemental Rule C(6). In addition, upon consent of the government, the court ordered a stay of discovery pending exhaustion of Carrasquillo's direct appeals in the related criminal matter.

By letter dated October 20, 1993, plaintiff informed the court that Carrasquillo had exhausted his direct appeals in the criminal proceeding. On October 22, 1993, the court ordered Claimants to respond to plaintiff's first set of interrogatories within 30 days. Plaintiff alleges that to date, neither Carrasquillo nor Martinez has answered any of the thirty-one interrogatories, and that "there is no record of any contact by either claimant with the United States Attorney's Office since 1991." Miller Decl. ¶ 16.

However, on or about April 14, 1994 (almost a week after the original return date of the motion), Carrasquillo submitted to the court a motion to stay proceedings and a motion for appointment of counsel. Carrasquillo alleges that he has not exhausted his criminal appeals because his action captioned *United States v. Carrasquillo*, 94–2069, currently is pending in the Second Circuit; as the government points out, this appeal relates to Carrasquillo's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. According to Carrasquillo, he retained an attorney and provided him with information that "proves that the United States Attorney's Office is presenting material facts to this court that are untrue and blatantly fraudulent." This information solely concerns the pendency of Carrasquillo's appeal, described above. Carrasquillo alleges that his retained counsel has refused to communicate with him or to act on his behalf and thus asks the court to appoint new counsel. To date, the court has not received any papers from claimant Martinez.

By stipulation dated February 28, 1994, the United States entered into a settlement agreement with potential claimant Manhattan Savings Bank. Miller Decl. Ex. B. Plaintiff avers that Carrasquillo, Martinez and the Manhattan Savings Bank are the only persons or entities who have filed a claim or answer or otherwise have appeared in this action, and that the time for others to do so has expired. Miller Decl. ¶ 13. Plaintiff now moves for judgment on the pleadings, or, in the alternative, for summary judgment, seeking an order striking the claim and answer filed by the Claimants and decreeing the forfeiture of defendants.

## DISCUSSION

### I. Motion for a Stay

As an initial matter, the court readily can dispose of Carrasquillo's motion to stay proceedings. As this court held on another occasion, the pendency of a habeas petition cannot serve as a basis to stay a civil forfeiture proceeding because "that civil proceeding holds no threat of additional punishment. Were this court to grant a stay on that ground, previously convicted claimants could in every case evade forfeiture by filing repeated habeas petitions for the duration of their sentence." *See United States v. Certain Real Property and Premises Known as 63–29 Trimble Rd., Woodside, N.Y.,* 812 F.Supp. 332, 334 (E.D.N.Y.1992); *cf. Smith v. Bennett,* 365 U.S. 708, 711, 81 S.Ct. 895, 897, 6 L.Ed.2d 39 (1961) (petition for writ of habeas corpus "is not an attack on the conviction but on the validity of the detention

and is, therefore, a collateral proceeding."). Accordingly, Carrasquillo's motion for a stay is denied, as is his request for appointment of counsel; Carrasquillo has failed to meet the "threshold requirement" of showing that his position is likely to be of substance. *See Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989).

## II. *Governing Standards*

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c)[4] must be decided solely on the pleadings before the court, in addition to any materials implicitly or explicitly incorporated by reference into those pleadings. *Dubied Mach. Co. v. Vermont Knitting Co., Inc.,* 739 F.Supp. 867, 869 (S.D.N.Y.1990). Judgment on the pleadings is appropriate " 'where material facts are undisputed and where a judgment on the pleadings is possible merely by considering the contents of the pleadings.' " *DeSantis v. United States,* 783 F.Supp. 165, 168 (S.D.N.Y.1992) (*quoting Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988)); *see also Dubied Mach. Co.,* 739 F.Supp. at 869 (party is entitled to judgment on pleadings " 'only if it has established that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.' ") (citations and internal quotations omitted). In evaluating such a motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989) (*citing Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 56 (2d Cir.1985)).

Where the court is confronted with matters outside the pleadings that it wishes to consider, Rule 12(c) requires that it treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. *See* Fed. R.Civ.P. 12(c). However, before converting the motion into one for summary judgment, all parties must be given notice, as well as a

reasonable opportunity to submit "all material made pertinent to such a motion by Rule 56." *Id.; see also Dubied Mach. Co.,* 739 F.Supp. at 869–70. In this case, matters outside the pleadings—including the Miller Declaration—have been submitted to and considered by the court. *See Krijn v. Pogue Simone Real Estate Co.,* 896 F.2d 687, 689 (2d Cir.1990) (affidavits submitted in support of and in opposition to Rule 12(c) motion constituted matters outside pleadings). The Claimants—as well as the plaintiff—were on notice that the court might treat the motion as one for summary judgment due to the fact that plaintiff styled the motion as one "for judgment on the pleadings and in the alternative for summary judgment" and submitted the Miller Declaration together with the motion papers. *See National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.,* 850 F.2d 904, 911 (2d Cir.1988) (finding appellants were on notice that motion might be treated as one for summary judgment where, *inter alia,* motion was styled as motion to dismiss "or, in the alternative, for summary judgment" and affidavits were filed with motion); *Dubied Mach. Co.,* 739 F.Supp. at 870 (finding defendant was on notice because plaintiff framed motion as one for both judgment on the pleadings and summary judgment). The court accordingly chooses to consider the present motion as one for summary judgment.

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, "if the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249–50, 106

---

4. Fed.R.Civ.P. 12(c) provides as follows:
   After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

S.Ct. at 2511; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (when moving party has carried its burden under Rule 56(c), opponent must do more than simply show that "there is some metaphysical doubt as to the material facts"). In considering a motion for summary judgment, the judge's function is not himself to weigh the evidence and determine the truth of an issue, but merely to determine whether there is an issue to be tried. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. And, insofar as granting a motion for summary judgment "deprives a party of its day in court and the right to present its cause to a jury, the district court in examining the record must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party." *Gibson v. American Broadcasting Cos., Inc.*, 892 F.2d 1128, 1132 (2d Cir.1989).

██ The propriety of granting summary judgment in the civil forfeiture context "must be determined in the context of the 'peculiar procedural requirements of the forfeiture laws.'" *United States v. Property Located at 15 Black Ledge Dr.*, 897 F.2d 97, 101 (2d Cir.1990) (citation omitted). These requirements, as relevant to the present motion, are as follows: the burden initially is on the government to establish its right to forfeiture by demonstrating probable cause. *Id.; United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir.1986). Once the government makes this showing, the burden shifts to the claimant to prove that the "factual predicates for forfeiture have not been met." *15 Black Ledge Dr.*, 897 F.2d at 101 (*citing Banco Cafetero Panama*, 797 F.2d at 1160). Bearing these principles in mind, the court now turns to the substantive law and facts at issue.

### III. *The Substantive Issues*

The government premises its motion on Supplemental Rule C(6), which provides, in relevant part, as follows:

The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.... *At the time of answering the claimant shall also serve the answers to any interrogatories served with the complaint* ....

Supplemental Rule C(6) (emphasis added). According to plaintiff, because the Claimants failed to comply with the emphasized portion of the Rule and moreover have failed to respond to the October 22, 1993 order of this court directing them to respond to the interrogatories within 30 days, the Claimants lack statutory standing to defend the forfeiture action and their claim and answer should be stricken and judgment entered in favor of the government.[5] Memorandum of Law in Support of Plaintiff United States' Motion for Judgment on the Pleadings ("Pl.'s Mem.") at 2.

The government is correct that Rule C(6) establishes the statutory standing requirements for an in rem forfeiture proceeding. *United States v. United States Currency in the Amount of Twenty–Four Thousand One Hundred Seventy Dollars ($24,170.00) More or Less*, 147 F.R.D. 18, 20 (E.D.N.Y.1993) [hereinafter *"$24,170.00 in Currency"*] (citing cases). While most cases holding that a claimant lacked standing to contest a forfeiture involved claimants who failed to file a verified claim or answer in a timely manner, *see, e.g., United States v. Eng*, 951 F.2d 461, 467–68 (2d Cir.1991); *United States v. A Parcel of Real Property Known as 134–22 222nd St.*, 724 F.Supp. 1081, 1083 (E.D.N.Y. 1988), two cases have explored the precise question of whether a claimant's failure to file interrogatory responses deprived the claimant of statutory standing under Supplemental Rule C(6). This court recently addressed that question in *$24,170.00 in Currency, supra*, and concluded that the claim-

---

**5.** It is undisputed that the Claimants complied with the portion of Rule C(6) requiring them to file a verified claim and answer in a timely fashion.

ants' failure to comply with the interrogatory requirement of Supplemental Rule C(6) warranted the striking of the claimants' claims and answer. In order to determine the applicability of that holding to this case, a close examination of the facts of *$24,170.00 in Currency* is required.

*$24,170.00 in Currency* was an action to forfeit currency under 21 U.S.C. § 881(a). The claimants timely filed claims and a motion to dismiss the complaint, which this court denied; claimants then filed and served their original answer on May 31, 1991 and their answer to the amended verified complaint in rem on October 11, 1991. *Id.* at 19. However, claimants never served or filed answers to the interrogatories served with the original complaint in March 1991. *Id.*

The claimants were granted six extensions of time to respond to the interrogatories; two days before the last extension expired, claimants' counsel requested a six-month stay of discovery, which Magistrate Judge Chrein granted. *Id.* The government contacted claimants' counsel after the stay expired to determine if claimants were prepared to proceed with discovery, at which time their counsel represented that he was unable to contact any of his clients. Claimants' counsel subsequently moved for, and was granted, leave to withdraw as counsel. *Id.* By order dated July 10, 1992, Magistrate Judge Chrein directed that discovery be completed by September 30, 1992, and scheduled a conference for that same date. *Id.* at 19–20. None of the claimants appeared at the conference. On October 2, 1992, Magistrate Judge Chrein signed a discovery order requiring all three claimants to serve responses to the interrogatories on or before December 15, 1992, and to appear for deposition on specified dates in January 1993. *Id.* at 20. The government twice attempted to contact claimants by mail, both to provide them with copies of the discovery order and to notify them that "it would seek a decree of forfeiture of the defendant currency if no response were forthcoming." *Id.* None of the claimants served responses to the interrogatories, appeared at depositions or provided any form of discovery; in addition, "they [had] not communicated personal-

ly with the United States at any time during [the] litigation [and] the last contact through counsel occurred when claimants' former counsel withdrew in July of 1992." *Id.*

In ruling on the government's motion seeking dismissal of the claims and answers pursuant to Rule C(6) and entry of a decree of forfeiture pursuant to Fed.R.Civ.P. 37(b), this court remarked on the extensive delays in the discovery proceedings; the fact that the claimants clearly were aware of their responsibility to submit responses to the interrogatories; and the fact that the interrogatories, while extensive, sought information that was related to the forfeiture action and about which the claimants would have personal knowledge. *Id.* at 21. This court noted that "[w]hen presented with adequate grounds, a court may excuse strict compliance with the dictates of Supplemental Rule C(6)." *Id.* (*citing Mercado v. United States Customs Serv.*, 873 F.2d 641, 644–45 (2d Cir. 1989); *United States v. Premises and Real Property at 4492 S. Livonia Rd.*, 889 F.2d 1258 (2d Cir.1989)). However, it found that "although the interrogatories were complicated, claimants' subsequent (and present) unavailability [did] not justify their failure to respond." *Id.* at 22 (*citing Eng*, 951 F.2d at 464–68). Accordingly, because the claimants had not complied with the interrogatory requirement of Supplemental Rule C(6), and there were no "adequate grounds" excusing their failure to do so, this court struck claimants' claims and answer. In addition, this court ordered a decree of forfeiture pursuant to Fed.R.Civ.P. 37(b)(2), concluding that this sanction was justified by the fact that claimants had ignored orders of the court and delayed the action for more than a year by virtue of their absence. *Id.*

In reaching this conclusion, this court relied on the only other case to address this precise issue—*United States v. One 1987 BMW*, 1992 WL 467320 (D.N.H. May 12, 1992)—in which the court granted the government's motion to strike the claimant's claim and answer based on the claimant's failure to respond to all but two of ninety-nine interrogatories. However, subsequent to this court's decision in *$24,170.00 in Currency*, the First Circuit reversed the judg-

ment of the district court in *One 1987 BMW*; *see United States v. One 1987 BMW*, 985 F.2d 655 (1st Cir.1993).

A brief review of the facts of *One 1987 BMW* is necessary. In that action to forfeit an automobile and certain currency pursuant to 21 U.S.C. § 881, the government served ninety-nine interrogatories together with the complaint on July 3, 1991; the claimant promptly filed a claim and answer, but "boycotted" the interrogatories. 985 F.2d at 657. The government moved to strike the claim on September 18, 1991. The claimant responded by requesting a stay of proceedings pending the outcome of his state criminal prosecution, or, alternatively, an order sealing the record so that any admissions could not be used against him. *Id.* The claimant subsequently filed answers to two of the interrogatories and contended that those answers sufficed to clarify his standing. *Id.* Finding that the claimant's failure to provide answers was "intentional, not inadvertent," the district court ruled that the claimant's disregard of the requirements of Supplemental Rule C(6) deprived him of statutory standing to contest the forfeiture, and granted the government's motion to strike his claim. 1992 WL 467320, at *2.

On appeal, the First Circuit concluded that the district court's order striking the claim was premature. 985 F.2d at 656. More specifically, the court held that the imposition of sanctions for a claimant's failure to answer interrogatories in a forfeiture proceeding is governed by Fed.R.Civ.P. 37.[6] *Id.* at 660. As the court explained,

> the Admiralty Rules provide for discovery via interrogatories—but they provide no

internalized mechanism for handling a party's failure to answer interrogatories fully and/or punctually. Given the imperative of Adm.R. A and the great similarity in language between Adm.R. C(6) and Fed. R.Civ.P. 33, it seems natural to look to Civil Rule 37 to fill the hole in the Admiralty Rules' interrogatory provisions. Civil Rule 37 provides what the Admiralty Rules do not: a mechanism for addressing failures to cooperate in discovery. Discerning no hint of inconsistency, we hold that the use of discovery sanctions in forfeiture actions is properly governed by the pertinent provisions of the Federal Rules of Civil Procedure. Accordingly, the imposition of sanctions for a claimant's failure or refusal to answer interrogatories in a forfeiture case must be judged under the jurisprudence of Civil Rule 37.

*Id.* (footnotes omitted). The First Circuit then described the "Rule 37 framework" as involving a two-step process: first, the party propounding the interrogatories must seek a court order compelling discovery; and second, if the party refuses to comply with such order, the court "may choose a sanction as stern as dismissing the action or striking the offender's pleadings." *Id.* Because in *One 1987 BMW* the government circumvented these procedures by moving to strike the claim for failure to comply with Supplemental Rule C(6) without first seeking to compel responses to interrogatories "and without making the slightest effort to observe Fed. R.Civ.P. 37's procedural strictures," *id.* at 661, the First Circuit ruled that the district court overstepped its discretion by striking the claim.[7] *Id.* Further, the court rejected

---

**6.** The relevant portion of Rule 37 reads as follows:

> (b)(2) If a party ... fails to obey an order to provide ... discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

Fed.R.Civ.P. 37(b)(2)(C).

**7.** The court explained the value of Rule 37's two-step process as follows:

> [A] motion to compel would have given the court an opportunity to address [the claimant's] Fifth Amendment and relevancy concerns, to enter an order fixing a firm date for compliance, and, if necessary, to punish [the claimant's] dilatory conduct by awarding counsel fees and costs.... If [the claimant] then persisted in giving a cold shoulder to the compliance date, the court would be in a position to exercise its discretion in choosing an appropriate sanction from those provided in Rule 37(b), including dismissal.

*Id.* at 661.

the government's argument that the district court was permitted to dismiss the action pursuant to its "inherent powers." *Id.*

■ I would agree with the First Circuit that Rule 37 provides the mechanism for addressing the failure to comply with discovery in a forfeiture case. *Cf. United States v. Amiel,* 995 F.2d 367, 371 (2d Cir.1993) ("The Federal Rules of Civil Procedure ... apply to civil forfeitures except to the extent they are inconsistent with the Supplemental Rules."). I also would agree, in general, that it is desirable that the procedural requirements of Rule 37 be adhered to before the Rule's powerful sanctions are invoked to provide redress for a claimant's failure to comply with Supplemental Rule C(6). However, where, as in *$24,170.00 in Currency,* the claimants have demonstrated a pervasive pattern of dilatory conduct, have ignored orders of the court and—perhaps most significantly—were on notice that the government would seek a decree of forfeiture if no response to the outstanding interrogatories was forthcoming, the government's technical failure to make a motion to compel does not vitiate the propriety of proceeding to "step two" and dismissing the action or striking the offending claimant's pleadings.

■ Turning to the matter at bar, while the Claimants have not responded to the first set of interrogatories or to the substance of the motion presently before the court, it is plain that their default does not rise to the level of that of the claimants in *$24,170.00 in Currency.* Rather, the Claimants here sought an immediate stay of discovery, instead of waiting until the eve of the expiration of the last of six extensions of their time to respond to the interrogatories; they did not fail to attend a scheduling conference or appear at depositions; and—prior to receiving the instant motion papers—they were not put on notice that the government would seek a decree of forfeiture if they refused to respond to the interrogatories. In addition, Carrasquillo responded to the present motion by seeking a stay, even though his papers were untimely and the merit of his application is lacking, as discussed above. Moreover, it bears noting that the Claimants in this case are proceeding *pro se* (and in fact have requested appointment of counsel), as compared to those in *$24,170.00 in Currency,* who for some period were represented by counsel. Finally, like the claimant in *One 1987 BMW,* the Claimants here have expressed Fifth Amendment and spousal immunity concerns with respect to the government's first set of interrogatories.[8]

This case is before the court in the somewhat awkward posture of a motion for summary judgment. The court is not presently prepared to conclude that the government has established that there is no question of material fact regarding whether it has demonstrated probable cause for forfeiture, as required for summary judgment in the civil forfeiture context. *See United States v. Property Located at 15 Black Ledge Dr.,* 897 F.2d 97, 101 (2d Cir.1990) (discussed at p. 31, *supra*). Rather, in light of the First Circuit's decision in *One 1987 BMW,* and the facts of this case as discussed immediately above, the relief the plaintiff requests should be sought by motion pursuant to Fed. R.Civ.P. 37(b).[9] While denying the government's present motion and requiring it to bring a motion to compel pursuant to Rule 37(b) may not be the most judicially economical means of disposing of this matter, adhering to the procedural dictates of Rule 37(b) has the benefit of placing the Claimants on notice that if they do not submit an appropriate response, forfeiture is imminent.

## CONCLUSION

For the reasons stated above, the government's motion for summary judgment is de-

---

8. The court notes that, in general, the thirty-one interrogatories propounded by the government seem reasonably designed to discover relevant information.

9. The October 20, 1993 letter of the government asking the court to direct Claimants to respond to its first set of interrogatories within thirty days (which was so ordered by the court on October 22, 1993) was not a motion to compel under Rule 37 because no notice was afforded to the Claimants and the letter did not include a certification from the government that it had attempted to confer in good faith with Claimants prior to making the application to the court. *See* Fed. R.Civ.P. 37(a)(2)(B).

nied, and the government is advised that it may bring an appropriate motion pursuant to Fed.R.Civ.P. 37(b).

SO ORDERED.